# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROSA H.,[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 25-2328-JWL** |
| **FRANK BISIGNANO,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security finding that Plaintiff's disability ended under sections 216 and 223 of the Social Security Act, 42 U.S.C. §§ 416, 423 (hereinafter the Act) on February 26, 2018 and that she did not become disabled again thereafter through December 28, 2023, the date of the Administrative Law Judge's (ALJ's) decision.  Finding no error in the ALJ's continuing disability review (CDR) pursuant to 20 C.F.R. § 404.1594, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.    Background

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of disability claimants, it has determined to caption Social Security decisions using only the initial of the Plaintiff's last name.

Plaintiff was last found to be disabled beginning May 7, 2013, based on an initial decision by the Social Security Administration (SSA) made on August 24, 2013.  (R. 163, 830-31).  Based on an initial CDR Plaintiff's disability was found to have ceased on February 26, 2018.  Id. 163, 194-97.  After exhausting administrative remedies before the SSA and pursuant to 42 U.S.C. § 405(g) Plaintiff filed this case seeking judicial review of the Commissioner's decision to cease benefits.  Plaintiff claims the ALJ failed adequately to evaluate the weight of medical opinions presented by a nurse practitioner and by Dr. Gary Bennett and erred in "playing doctor" to assess Plaintiff's mental limitations.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

In a CDR, the Commissioner does not use the five-step sequential process to evaluate a claim for disability but uses an eight-step evaluation process.  20 C.F.R. § 404.1594(f)(1-8); Hayden v. Barnhart, 374 F.3d 986, 988 (10th Cir. 2004); Jaramillo v. Massanari, 21 F. Appx. 792, 794 (10th Cir. 2001).  If at any step a determination can be made that a recipient is unable to engage in substantial gainful activity, evaluation under a subsequent step is not necessary.  20 C.F.R. § 404.1594(f).  In step one, the Commissioner must determine whether the recipient is presently engaged in substantial gainful activity.  Id. § 404.1594(f)(1).  Step two considers whether the recipient has a medically severe impairment or combination of impairments which is equivalent to one of the impairments listed in Appendix 1 to subpart P of the regulations.  Id.

3

§ 404.1594(f)(2).  If any or all the recipient's current impairment(s) meets or equals a listed impairment, her disability is conclusively presumed to continue.  Id.  In step three, the Commissioner determines if the recipient's impairment(s) which was present at the most recent favorable decision has undergone medical improvement.  Id. § 404.1594(f)(3)&(b)(1).  To determine whether medical improvement has occurred, the ALJ compares "the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision ... to the medical severity of that impairment(s) at that time."  Id. § 404.1594(b)(7) (emphases added).  Medical improvement has occurred when there is a decrease in medical severity, which is shown by "changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)."  Id. § 404.1594(c)(1).

If medical improvement is found in step three, step four requires a determination whether that medical improvement is related to the recipient's ability to work.  Id. § 404.1594(f)(4).  In deciding whether medical improvement is related to the ability to work, the ALJ will compare the recipient's current residual functional capacity (RFC) "based upon this previously existing impairment(s) with [her] prior residual functional capacity."  Id. § 404.1594(b)(7).  "Unless an increase in the current residual functional capacity is based on changes in the signs, symptoms, or laboratory findings, any medical improvement that has occurred will not be considered to be related to [the recipient's] ability to work."  Id. § 404.1594(c)(2) (emphasis added).

If, however, the most recent favorable decision was based upon a finding that the recipient's condition met or equaled the severity of an impairment in the Listing of

Impairments (20 C.F.R., Pt. 404, Subpt. P, App.1), an RFC assessment would not have been made because RFC is not assessed until after consideration of the Listing of Impairments. Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988); compare, 20 C.F.R. § 404.1520(e) (RFC assessed if impairment(s) do not meet or equal a listing), with § 404.1594(c)(3)(i) (if most recent favorable decision was based on a finding the impairment(s) met or equaled a listing, an assessment of RFC would not have been made). In such a case, where "medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make [the] most recent favorable decision, [the Commissioner] will find that the medical improvement was related to [the recipient's] ability to work." 20 C.F.R. § 404.1594(c)(3)(i).

If the Commissioner determines, at step three, that there has been no medical improvement or, at step four, that any medical improvement is not related to the recipient's ability to work, he will determine that disability continues unless he finds at step five that certain statutory exceptions apply. Id. § 404.1594(f)(5). If medical improvement related to the recipient's ability to work is found at steps three and four, the Commissioner will determine, at step six, whether all the recipient's current impairments in combination are severe. Id. § 404.1594(f)(6). If the recipient's current impairments in combination are severe, the Commissioner will assess her RFC at step seven "based on all [her] current impairments, and consider whether [she] can still do work [she has] done in the past." Id. § 404.1594(f)(7). If so, the recipient's disability benefits will be terminated. Id. If not, then the Commissioner will determine at step eight whether (when

5

considering the recipient's current RFC, age, education, and past work experience) she can perform other work existing in the economy. <u>Id.</u> § 404.1594(f)(8). If so, the recipient's disability benefits will be terminated. <u>Id.</u>

The burden in a termination case is on the Commissioner to show both (1) medical improvement related to the recipient's ability to work, and (2) that the recipient is currently able to engage in substantial gainful activity. <u>Patton v. Massanari</u>, 20 F. Appx. 788, 789 (10th Cir. 2001) (citing <u>Glenn v. Shalala</u>, 21 F.3d 983, 987 (10th Cir. 1994); and 20 C.F.R. 404.1594(a)); <u>Jaramillo</u>, 21 F. Appx. at 794 (same).

This eight-step sequential evaluation process relates to the Commissioner's determination here that Plaintiff's disability ended as of February 26, 2018, and is considered by the court with respect to her "current" condition at that time. The Commissioner determined that Plaintiff's condition was not disabling at any time between February 26, 2018, and the date of his decision, December 28, 2023. (R. 41). Plaintiff alleges error in that determination because the ALJ failed adequately to evaluate the weight of medical opinions presented by a treating nurse practitioner and by Dr. Gary Bennett and erred in "playing doctor" to assess Plaintiff's mental limitations. The court addresses those errors and need not further address the eight-step sequential evaluation process about which Plaintiff does not allege specific error.

## II.   Discussion

### A.   Treating Nurse Practitioner Medical Opinion

Plaintiff points to a Report of Contact completed by a state agency psychologist, Dr. Duclos, dated July 24, 2018, in which Dr. Duclos summarized the "Signs, Symptoms,

and Lab:" from the Comparison Point Decision (CPD) in this case dated August 24, 2013, and including the treating nurse practitioner's analysis:

> The claimant is a 32-year-old female.  The claimant has restarted mental health treatment.  The treating nurse practitioner indicates that the claimant would have multiple marked limitations in her ability to sustain concentration and interact appropriately in the work setting.  The claimant has a consistent history of poor treatment compliance and sporadic treatment attendance. The treating nurse practitioner believes the claimant has paranoid ideation and auditory hallucinations, which would interfere with her ability to interact with others.  She also indicates that the anxiety associated with psychosis causes isolation, absenteeism and impaired functioning in the work environment.  The claimant does have a history of substance abuse, but currently reports abstinence.  The claimant reports that she is 4 to 5 months pregnant and medication will be determined following a visit to her OB.  Claimant filed her initial application; she was seen for a mental status examination (5/16/13).  This is one week after the claimant's mother died.  The evaluating psychologist did not observe any signs of psychosis, but did find evidence of a mood disorder and generalized anxiety disorder, with panic attack symptoms

(R. 830).  Plaintiff asserts this is a medical opinion of the unidentified treating nurse practitioner and was therefore required to be addressed and weighed by the ALJ in his hearing decision.  (Pl. Br. 19).

The Commissioner points out that the ALJ accorded no weight to Dr. Duclos's opinion that the file contained insufficient evidence to evaluate the CDR because the evidence before the ALJ was sufficient and Dr. Duclos's "opinion was primarily based on Plaintiff's failure to cooperate with the CDR, including failure to attend consultative examinations."  (Comm'r Br. 7) (citing R. 39, 830-31).  The court notes that although the decision below found "the State agency medical consultants' opinions are not entitled to any weight," and Dr. Duclos is a psychological consultant, Dr. Duclos found insufficient evidence in the file and the ALJ specifically cited Dr. Duclos's opinions (Exs. B7F, B8F)

in support of his finding no weight. (R. 39).  The court finds the ALJ's finding relates also (and perhaps foremost) to Dr. Duclos's opinion.

The Commissioner argues Dr. Duclos's Report of Contact was describing the treating nurse practitioner's opinion that formed the basis of the CPD and the ALJ had no duty to weigh the CPD as a medical opinion.  (Comm'r Br. 7).  He argues the "regulations provide that decisions in CDR cases are 'made on a neutral basis without any initial inference as to the presence or absence of disability being drawn from the fact that you have previously been determined to be disabled.'"  Id. (quoting 20 C.F.R. § 404.1594(b)(6)).  The Commissioner argues "the ALJ appropriately considered the CPD" and found that Plaintiff had medically improved thereafter.  Id. 7-8.

In her Reply Brief, Plaintiff reiterates her argument that the ALJ failed to evaluate the treating nurse practitioner's medical opinion.  She argues the ALJ failed his duty fully and fairly to consider the record evidence.  She argues,

> The Defendant presents an impermissible post-hoc rationalization to explain why he thinks the ALJ did not need to consider the nurse's marked mental limitation opinion by stating, "The ALJ found that in May 2013, the nurse opined that Plaintiff had multiple marked limitations in concentration and interaction after her mother passed away (Tr. 33)."  (Def. Memo., P. 7).  However, Dr. Crystal Duclos's July 25, 2018 report does not state that the "marked mental limitations" opinion is from 2013.  In fact, the relevance of the 2013 date is neither apparent from Dr. Duclos's report, nor from the ALJ's decision itself.  (Tr. 830, 33).  The evidentiary record does not contain a 2013 medical report.  The reviewing Court [sic] is not able to determine the name of the nurse of the date of the nurse's report that corresponds with the "marked mental limitations" opinion.  There is an ambiguity in the record here that the ALJ did not resolve or reconcile.  If the ALJ had properly considered the nurse's opinion, then he could have resolved, reconciled, or otherwise addressed this conflict, ambiguity, or evidentiary gap in the record.  However, as it stands now, meaningful review is not possible because guesswork and speculation are the only ways

> to figure out which nurse opined to marked limitations and at what time. What is apparent from the ALJ's decision (Tr. 33) and Dr. Duclos's report (Tr. 830) is that a medical expert opined to marked mental limitations, and that the ALJ did not fully and fairly consider that expert opinion.

(Reply 2).

Plaintiff's treating nurse practitioner argument claims an ambiguity which is non-existent when one understands the Social Security CDR regulation, 20 C.F.R. § 404.1594. As discussed above, if at the time the agency performs its CDR, Plaintiff's condition does not meet or equal the severity of a Listed Impairment, the Commissioner will determine if the claimant's impairment(s) which was present at the most recent favorable decision has undergone medical improvement. 20 C.F.R. § 404.1594(b)(1), (f)(2), & (f)(3). That regulation requires the agency to use the most recent favorable decision as the CPD to determine whether medical improvement has occurred and to determine whether that medical improvement is related to the ability to work. Id. § 404.1594(b)(7). Moreover, as the Commissioner argued in his Brief, CDR decisions under 20 C.F.R. § 404.1594 "are 'made on a neutral basis without any initial inference as to the presence or absence of disability being drawn from the fact that you have previously been determined to be disabled.'" (Comm'r Br. 7) (quoting 20 C.F.R. § 404.1594(b)(6)).

Dr. Duclos's opinion to which Plaintiff appeals as containing the treating nurse-practitioner's medical opinion (R. 830-31), is a Report of Contact containing Dr. Duclos's CDR analysis of the CPD made by the treating nurse practitioner on August 24, 2013 in which the nurse practitioner concluded that the "C[laimant] meets listing 12.04"

9

as listed in August 2013 (R. 830) as compared to Dr. Duclos's "CURRENT EVALUATION" on July 25, 2018 in which she concluded, "IE [insufficient evidence] in file to evaluate" whether Plaintiff's condition in July 2018 met Listing 12.04 as listed in August 2013. (R. 831). The court's understanding (as is apparent to any practitioner, medical consultant, psychological consultant, or other individual familiar with the CDR regulation—20 C.F.R. § 404.1594) is confirmed by Dr. Duclos's Report. On the first page she identifies Plaintiff by name, date of birth, and Social Security number. (R. 830). She notes Plaintiff's onset date of disability, that she had been on the disability rolls five years at the date of Dr. Duclos's report, that the CPD date was August 24, 2013, and that the basis for finding Plaintiff disabled in the CPD was Listing 12.04. Id. After the identifying information the Report contains the heading "CPD EVALUATION" and the remainder of that page is Dr. Duclos's discussion of Plaintiff's impairments in the CPD, her summary of Plaintiff's "Signs, Symptoms, and Lab:" in the CPD as quoted supra at 7. Id. On the second page of Dr. Duclos's report is her "CURRENT EVALUATION" dated July 25, 2018. (R. 831). In the evaluation Dr. Duclos lists Plaintiff's then-current impairments which are completely different from those in the CPD, and she summarizes the then-current "Signs, Symptoms, and Lab.," citing medical records from 2016 and 2017. Id. She then summarizes Plaintiff's then-current Activities of Daily Living. Id. Dr. Duclos opines that current medical records and current mental status examination "is needed to fully evaluate M[ental] I[mpairments]. However C[laimant] has missed exams on initial and reconsideration. We have I[nsufficient] E[vidence] in file to make a determination." Id. She concluded, "I[nsufficient] E[vidence] in file to evaluate." Id.

10

Although the ALJ found Dr. Duclos's opinion is "not entitled to any weight because sufficient evidence from which to evaluate the claimant's functional capacity was submitted at the hearing level and [Dr. Duclos's] opinions were primarily based upon the claimant's failure to cooperate with the continuing disability review, including failure to attend consultative examinations" (R. 39), his findings in this regard are supported by the record evidence.  Moreover, The ALJ accorded full weight to the treating nurse-practitioner's opinion as the CPD at the time the CPD was made on August 24, 2013.  More is not required.  In accordance with the regulations, the CPD is accorded no weight in a CDR beyond the date medical improvement related to the ability to work is found to have occurred.  The ALJ did not err in evaluating the medical opinion of Plaintiff's treating nurse practitioner contained in the CPD.

### B.    Dr. Bennett's Medical Opinion

Regarding Dr. Bennet's medical opinions, Plaintiff argues:

> The ALJ erred as a matter of law by failing to adequately evaluate [sic] Dr. Gary Bennett's expert medical opinion regarding marked mental limitations in all of the "paragraph B" criteria as they existed in 2013.

(Pl. Br. 23) (citing R. 32-32, 35, 63).

As a preliminary matter the court finds that Dr. Bennett did not testify that Plaintiff had marked mental limitations in all of the "paragraph B" criteria as they existed in 2013.  At the hearing, the ALJ said "So, let's start with Section A of Listing 12.04 as it existed in 2013.  Does the Claimant's bipolar disorder meet Section A either, 1 or 2, or 3?" (R. 60).  Dr. Bennett responded, "Well, Judge, the records that I reviewed [INAUDIBLE] called a mood disorder more than a passive disorder as opposed to bipolar

11

disorder.  I don't know that she would meet the A criteria for bipolar disorder." (R. 60) (brackets in original).  There was simply no discussion regarding the "Paragraph B" criteria as they existed in 2013, and there was no need for that discussion as Dr. Bennet had already testified he could not opine Plaintiff met the A criteria of the listing in 2013. Later in the hearing the ALJ asked Dr. Bennett if Plaintiff's impairments "meet or medically equal any of the current listings?"  Id., at 62 (underline added).  Dr. Bennett responded that Listing 12.03 would be met "taking into account her substance abuse."  Id. The ALJ followed up, "And as far as the B criteria with substance use, do you have an opinion as to that?"  Id.  Dr. Bennett responded, "That would be marked for all of the B criteria."  Id., at 63.  Thus, Dr. Bennett testified that at the time of the hearing Plaintiff was markedly limited in all of the current Paragraph B criteria, not the 2013 criteria.

Plaintiff argues, "The reasons provided by the ALJ for rejecting Dr. Bennett's medical opinion are illogical and not supported by substantial evidence."  (Pl. Br. 23). Plaintiff argues, "The ALJ did not build an accurate and logical bridge from evidence that the Plaintiff reached out to behavioral health for housing assistance would be inconsistent with not maintaining sobriety;" and "the ALJ erred by failing to build an accurate and logical bridge between evidence of the Plaintiff's drug and alcohol use, to the ALJ's conclusion that improvement occurred February 26, 2018."  Id., at 24 (citing Bradley v. Berryhill, No. 17-CV-02658-STV, 2018 WL 6168066, at *10 (D. Colo. Nov. 26, 2018).

The ALJ considered Dr. Bennett's opinion twice in his decision.  Once, as it relates to whether, after February 26, 2018, the severity of Plaintiff's condition met or medically equaled the severity of a listed impairment as that listed impairment existed at

the time of the CPD, August 24, 2013. (R. 31-33) (Finding no. 5). The second time, he

considered Dr. Bennett's decision as it relates to whether, after February 26, 2018, the

severity of Plaintiff's condition met or medically equaled the severity of a listed

impairment as that listed impairment existed at the time of the ALJ's decision, December

28, 2023. Id., at 34-35. (Finding no. 8).

In the first instance, he discussed Dr. Bennett's testimony, wherein he opined "I

don't know that [Plaintiff] would meet the A criteria for bipolar disorder [(12.04)]" in

2013. He found:

> Dr. Bennett, Ph.D., opined that the claimant's symptoms do not fit the
> typical presentation for Bipolar disorder. However, Dr. Bennet is not a
> treating source, and this is contrary to previous reports of a Bipolar
> diagnosis. As such, this opinion is entitled to little weight.

Id. 32.

In the second instance he discussed Dr. Bennett's testimony as it relates to

Plaintiff's functioning after February 26, 2018 with regard to the listings as they exist at

the time of the hearing:

> Although Dr. Bennett was able to review the medical record as a whole, his
> opinion that the claimant has not remained sober long enough to determine
> how she functions without drug and alcohol abuse is inconsistent with the
> claimant's treatment history, including reports she only reached out to
> behavioral health for assistance with housing. Additionally, Dr. Bennett
> testified he had not noticed she reported sobriety in 2022 and 2023, and he
> was unable to provide an opinion as to the claimant's residual functional
> capacity assessment with or without substance use. Instead, Dr. Bennett
> indicated the claimant had marked limitations in all of the "paragraph B"
> criteria without specifying. The undersigned finds these opinions are
> inconsistent with the claimant's sporadic treatment history, the limited
> clinical signs and findings, as well as her activities of daily living. As such,
> this opinion is given little weight.

13

(R. 35).

The court finds no error in the ALJ's evaluation of Dr. Bennett's opinions.  As quoted above, the ALJ provided reasons for discounting Dr. Bennett's opinions, and those reasons are supported by the record evidence.  Plaintiff's arguments do not require a contrary result.  Plaintiff's argument that "The relationship between the Plaintiff's substance use and need for housing assistance is not at all apparent from the ALJ's decision" misapprehends the ALJ's determination to discount Dr. Bennett's opinion.  The ALJ found Dr. Bennett's opinion that Plaintiff has not remained sober long enough to determine her ability to function when not using drugs and alcohol is inconsistent with reports in her treatment record, which Dr. Bennett had reviewed, stating that she sought behavioral health treatment merely because she wanted housing assistance—thereby suggesting she did not seek substance abuse assistance or was not using substances at that time.  Moreover, the ALJ found Dr. Bennett's opinion inconsistent with Plaintiff's own reports of sobriety in 2022 and 2023—which the doctor testified he had not noticed.  These are valid reasons for discounting Dr. Bennett's opinion.

Plaintiff's second argument—that "The ALJ's decision does not make apparent how he determined the Plaintiff's functioning for the period between February 2018 to June 2022, when sobriety only occurred sometime in 2022—yields a similar result.  At this point in his decision, the ALJ was explaining his reasons for discounting Dr. Bennett's opinion, he had already decided medical improvement had occurred on February 26, 2018.  (R. 33) (Finding no. 6).  Moreover, the ALJ did not accept Dr. Bennett's opinion that Plaintiff was disabled if considering drug and alcohol use, in fact

14

he found Plaintiff was currently not disabled whether using or not using drugs and alcohol. (R. 35-39) (Finding no. 9).

Finally, the court finds Plaintiff's arguments in her Reply Brief without merit but briefly discusses two of them. First, Plaintiff argues that she is disabled from her past relevant work and therefore "the ALJ had the legal obligation to consider any Drug and Alcohol Abuse ('DAA')." (Reply 3). This is simply an incomplete statement of the law. As Plaintiff acknowledges, the ALJ found her "unable to perform past relevant work." Id. (quoting R. 39) (Finding no. 10). The inability to perform past relevant work alone does not qualify as disability. The regulations provide the basic definition of disability in 20 C.F.R. § 404.1505:

> The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. To meet this definition, you must have a severe impairment(s) that makes you unable to do your past relevant work (see § 404.1560(b)) or any other substantial gainful work that exists in the national economy.

20 C.F.R. § 404.1505(a) (emphasis added).

Although the ALJ found Plaintiff unable to perform past relevant work (R. 39), he also found that "since February 26, 2018, the claimant has been able to perform a significant number of jobs in the national economy." Id., 40 (Finding no. 14, bold omitted). Thus, since February 26, 2018, Plaintiff's condition does not meet the definition of disability, and she is not disabled. Moreover, the agency will determine whether drug addiction or alcoholism is a contributing factor material to the

15

determination of disability only if it finds that the claimant is disabled, 20 C.F.R. § 404.1535, and the ALJ found Plaintiff not disabled since February 26, 2018.  (R. 41).

In her Reply Brief, Plaintiff also argues "the Defendant's efforts to make post-hoc rationalizations as to what the ALJ was thinking are not sufficient to overcome reversal and remand in this case."  It is unclear to what Plaintiff's argument refers, but the court notes that its decision is based not on what the ALJ was thinking but on what the ALJ said in his decision and on the evidence in the record.

### C.      The ALJ "Playing Doctor"

Plaintiff argues,

> After failing to consider an expert opinion regarding marked mental limitations from a nurse practitioner ([R]. 830), and after rejecting an expert opinion regarding marked mental limitations from Dr. Bennett without an accurate and logical explanation ([R]. 35), the ALJ erred as a matter of law by "playing doctor" to use his own lay opinion to assess the Plaintiff's "paragraph B" criteria ([R]. 32-33) and RFC ([R]. 35-36).

(Pl. Br. 27).

As found hereinabove, the ALJ properly considered the opinion of Plaintiff's treating nurse practitioner in the CPD and properly weighed and discounted Dr. Bennett's opinion.  Plaintiff's suggestion that having done so the ALJ was "playing doctor" when he assessed Plaintiff's mental limitations in the Paragraph B criteria is without basis in law or fact.

RFC is an assessment of the most a claimant can do on a regular and continuing basis despite her limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); see also, White, 287 F.3d at 906 n.2.  It is an administrative assessment, based on all the evidence, of how a

16

claimant's impairments and related symptoms affect her ability to perform work related activities.  Id.; see also SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 126 (Supp. 2012) ("The term 'residual functional capacity assessment' describes an adjudicator's findings about the ability of an individual to perform work-related activities."); SSR 96-8p, West's Soc. Sec. Reporting Serv., 144 (Supp. 2012) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) ... may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.").  The Commissioner has provided eleven examples of the types of evidence to be considered in making an RFC assessment, including:  medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, attempts to work, need for a structured living environment, and work evaluations.  SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2012).

Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004).  "And the ALJ's RFC assessment is an administrative, rather than a medical determination."  McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing Social Security Ruling (SSR) 96-05p, 1996 WL 374183, at *5 (July 1996)).  Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ."  Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at

17

**2 (10th Cir. Aug. 26, 1999); 20 C.F.R. §§ 404.1545(a), 416.945(a).  Moreover, the final responsibility for determining RFC rests with the Commissioner.  20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946.

"[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion."  Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard, 379 F.3d at 949; Wall, 561 F.3d at 1068-69).  The narrative discussion required by SSR 96-8p to be provided in an RFC assessment does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed.  Castillo v. Astrue, No. 10-1052-JWL, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011).

Here, the ALJ considered the Paragraph B criteria as they existed in 2013 and explained why he determined Plaintiff's condition did not meet or medically equal listing 12.04 pursuant to those criteria at any time since February 26, 2018.  (R. 32-33).  Plaintiff has not shown error in that finding.  The ALJ also considered the Paragraph B criteria as they exist now and explained why Plaintiff's condition does not meet or medically equal the severity of any mental listing since February 26, 2018.  Id. at 34-35.  Plaintiff has shown no error in that finding and has not shown that the ALJ was "playing doctor" in making these findings.

Plaintiff has shown no error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

18

19

Dated May 22, 2026 at Kansas City, Kansas.


s:/    John W. Lungstrum____

**John W. Lungstrum**
**United States District Judge**